UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLLAND HANLEY,<br><br>Plaintiff,<br><br>v.<br><br>OPINSKI, et. al.,<br><br>Defendants. | **CASE NO. 1:16-cv-00391-DAD-MJS**<br><br>**ORDER DIRECTING PLAINTIFF TO EITHER FILE AN AMENDED COMPLAINT OR A NOTICE OF WILLINGNESS TO PROCEED ON COGNIZABLE CLAIM AGAINST DEFENDANT SERGEANT DOE**<br><br>**(ECF NO. 1)**<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff proceeds pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His March 21, 2016 complaint is before the Court for screening. (ECF No. 1.)

**I.   Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.   Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations

are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**III.    Plaintiff's Allegations**

Plaintiff currently resides in the Napa State Hospital.  The circumstances of his commitment are unknown to the Court.  Sometime prior to his commitment, Plaintiff was housed in the Merced County Detention Facility in Merced, California, where the actions giving rise to this suit took place.  He brings this suit against the following Defendants: Police Officer ("PO") Opinski of the Merced Police Department ("MPD"); PO Binder of the MPD; Sergeant John Doe,[1] a police sergeant with the MPD; Detective Deliemen of the MPD; and Does 1 through 10, government employees associated with the MPD and the courts. Plaintiff's complaint may be fairly summarized as follows:

In or around September 2014, Plaintiff was arrested by PO Perez of the MPD.[2] Plaintiff told PO Perez that someone would soon try to "set him up" for a murder he did not commit.  PO Perez notified a homicide detective.

---

[1] In the caption of his complaint, Plaintiff refers to Sergeant Doe as "John Doe #2." In the body of his complaint, however, Plaintiff only refers to a Sergeant "John Doe #1."  As there only appears to be one "Sergeant Doe" in Plaintiff's narrative, the Court will proceed on the assumption that Sergeant John Does Nos. 1 and 2 are the same person.  If Plaintiff meant to allege otherwise, he must file an amended complaint correcting his pleading.

[2] This arrest appears to be unrelated to the claims in this complaint.

On or around November 8, 2014, Plaintiff was stopped by PO Opinski while he was walking with his dog and girlfriend, Kathy.  PO Opinski took Kathy aside and asked her if she knew Plaintiff's whereabouts in the early morning of November 5, 2014, when a 79 year old woman named Carol Ann Watts was attacked by an unknown male assailant. Kathy told PO Opinski that Plaintiff was at home with her and their roommates at that time. PO Opinski said he was on orders from his sergeant to take Plaintiff in for questioning, whereupon PO Opinski took Plaintiff to the Merced County police station.

Plaintiff was questioned by Sergeant Doe and PO Binder.  Plaintiff explained that he had already met with a homicide detective to tell him that someone would try to set Plaintiff up for murder.  During the interview, Sergeant Doe and PO Binder led Plaintiff to believe that Plaintiff would be charged with murder.

While PO Opinski was transporting Plaintiff to the Merced County Detention Facility, he told Plaintiff that he, PO Binder, and Sergeant Doe knew Plaintiff was innocent, but Sergeant Doe wanted to arrest him anyway.  Plaintiff alleges PO Opinski failed to report this police misconduct to his superiors.

On November 21, 2014, Plaintiff was released from custody on bail, presumably after being charged with (unspecified) crimes related to the above-described assault.  On or around November 24, 2014, during the Thanksgiving holiday, Plaintiff learned that a woman named Lisa had been abducted and stabbed a few days prior because she "wasn't keeping her mouth shut on the people" who were behind setting up Plaintiff. Plaintiff took Lisa to the public safety building to file a complaint about the incident.  At the public safety building, Plaintiff and Lisa met with Detective Deliemen.  Lisa showed Detective Deliemen her stab wounds, however Detective Deliemen said he could not investigate the incident at that time because of the holiday.  He told Plaintiff and Lisa to return on Monday, when the rest of the homicide detectives would be back at work. Plaintiff told Detective Deliemen that Lisa "probably wouldn't be around" on Monday because the individuals who attacked her wanted to kill her.  Plaintiff states Lisa was nowhere to be found on Monday, and he still does not know where she is.  Plaintiff

3

believes the information Lisa had was important to proving Plaintiff's innocence.

Plaintiff's bail was at some point revoked after he had a "mental breakdown" and began smashing windows with a golf club. On July 8, 2015, at a preliminary hearing, it was revealed that there was no DNA found on Plaintiff's shoes, proving Sergeant Doe had lied about conducting a "pap smear test" which found biological evidence linking Plaintiff to the crime. An individual by the name of Johnny Mackie testified at the preliminary hearing that Sergeant Doe had forced Mr. Mackie to identify Plaintiff in a photo array, even though Plaintiff did not resemble the suspect: the suspect had a full beard, but Plaintiff was clean-shaven. PO Opinski confirmed that Sergeant Doe had instructed Opinski to arrest Plaintiff even though Sergeant Doe knew Plaintiff was innocent.

Plaintiff alleges all of the charges against him were ultimately dismissed.

Plaintiff accuses Defendants of cruel and unusual punishment, violating the Due Process and Equal Protection Clauses of the Fourteenth Amendment, slander, wrongful prosecution, and wrongful imprisonment. He seeks punitive and compensatory damages and injunctive relief in the form of a court order directing the United States Department of Justice and the United States Attorney's Office to conduct a full criminal investigation into this incident.

**IV.   Analysis**

    **A.   Scope of Relief**

Plaintiff seeks an order directing the United States Department of Justice and United States Attorney's Office to conduct a full "criminal investigation" into Defendants' conduct. Those entities are not party to this suit, and the Court cannot direct the actions of a non-party. Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties.")

**B. Linkage**

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has not alleged that Defendant Delieman personally participated in violating his rights. Defendant Delieman is alleged only to have failed to take Lisa's complaint after she was stabbed. There is no basis for claiming Plaintiff's rights were violated by this conduct. To suggest that it was part of a conspiracy to ignore Plaintiff's plight, it is purely speculative and lacks the elements essential to plead a conspiracy (as discussed in more detail in subsection IV.G, below). Plaintiff's claims against Defendant Delieman will be dismissed.

**C. Doe Defendants**

The use of Doe defendants generally is disfavored in federal court. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). Plaintiff may, under certain circumstances, be given the opportunity to identify unknown defendants through discovery prior to service. Id. (plaintiff must be afforded an opportunity to identify unknown defendants through discovery unless it is clear that discovery would not uncover their identities). However, in order to proceed to discovery, Plaintiff must first state a cognizable claim. While Plaintiff has stated a cognizable claim against Sergeant Doe, discussed below in subsection IV.D.1, as Plaintiff's complaint is currently pled, he has not stated any cognizable claims against Defendant Does 1 through 10, government employees of the MPD and the courts, nor has he "set forth specific facts detailing how each individual violated his rights." Those

Defendants will therefore be dismissed.

### D. Due Process

The Due Process Clause protects individuals from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

#### 1. Wrongful Prosecution

The Ninth Circuit has recognized "a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001); see also Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111-12 (9th Cir. 2010) (relying on Devereaux to hold that a state investigator "who deliberately mischaracterizes witness statements in her investigative report also commits a constitutional violation"). To state such a claim, Plaintiff must point to the evidence he contends was deliberately fabricated. Bradford v. Scherschligt, 803 F.3d 382, 386 (9th Cir. 2015). He can then point to evidence of one of the following to prove the fabrication was deliberate: "(1) Defendants continued their investigation of [Plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Devereaux, 263 F.3d at 1076.

Here, Plaintiff states that Sergeant Doe forced an eyewitness named Johnny Mackie to choose Plaintiff's picture from a photo array, lied about possessing biological evidence linking Plaintiff to the crime, and withheld evidence that the suspect had a full

beard. All charges against Plaintiff were dismissed once these facts came to light. At this stage, Plaintiff has alleged sufficient facts to show Sergeant Doe deliberately fabricated evidence against Plaintiff.

However, Plaintiff attributes all of the improper investigative techniques to Sergeant Doe alone. He does not connect any other Defendants to Sergeant Doe's investigative techniques. Plaintiff's claims for wrongful prosecution against all remaining Defendants will be dismissed.

### 2. Wrongful Incarceration

The Fourteenth Amendment does not protect against all deprivations of liberty, and false imprisonment or deprivation of liberty is not per se unconstitutional merely because the defendant is a state official. Haygood v. Younger, 769 F.2d 1350, 1355 (9th Cir. 1985) (citing Baker v. McCollan, 443 U.S. 137, 146 (1979)). Rather, the Fourteenth Amendment "protects only against deprivations of liberty accomplished without due process of law." Baker v. McCollan, 443 U.S. 137, 146 (1979). Thus, where a plaintiff claims he was wrongfully arrested and incarcerated, courts look to whether the circumstances surrounding plaintiff's arrest and incarceration afforded plaintiff necessary procedural protections, such as probable cause for the arrest and the right to a speedy trial. Id. at 144.

A plaintiff's ultimate innocence of the charges is "largely irrelevant," as the Constitution does not guarantee that "only the guilty will be arrested." Baker, 443 U.S. at 145. Law enforcement officials are not expected to investigate independently every claim of innocence. Id. at 145-46. "The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." Id. However, in cases where a plaintiff alleges the defendants should have known the plaintiff was innocent of the charges, his incarceration may violate Due Process where either "(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time." Garcia v. Cty. of Riverside, 817 F.3d 635, 640 (9th Cir. 2016) (quoting Rivera v. Cty. of Los Angeles, 745 F.3d 384,

7

391 (9th Cir. 2014).

Here, Plaintiff presents nothing but pure speculation that at the time of his arrest, Defendants "knew" he was innocent but chose to arrest and detain him anyway. Plaintiff states he told officers someone was "trying to set [Plaintiff] up" for a crime he did not commit; he alleges no other basis for claiming Defendants should have investigated further. The pleadings suggest there was probable cause to arrest him and that he retained access to the courts while detained. Indeed, it appears Plaintiff was released on bail shortly after his arrest and was later returned to custody on an unrelated offense.

Plaintiff's claims for wrongful incarceration will be dismissed.

### E.     Cruel and Unusual Punishment

The Eighth Amendment protects prisoners from cruel and unusual punishment in the form of excessive force and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Plaintiff appears to have been a pretrial detainee during the periods relevant to his claims, therefore the Eighth Amendment does not apply. Conditions of confinement and excessive force claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003).

Plaintiff has not, however, alleged any facts relating to his confinement. As such, he has not stated any cognizable Fourteenth Amendment conditions of confinement or excessive force claims. The Court will set out below the pleading standards for each such claim should Plaintiff elect to amend.

#### 1.     Excessive Force

Courts apply a more rigid standard when evaluating excessive force claims brought by pretrial detainees. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475 (2015) (citing Ingraham v. Wright, 430 U.S. 651, 671-71 (1977)). While excessive force claims brought by prisoners under the Eighth Amendment are evaluated under the subjective reasonableness standard, Wilkins v. Gaddy, 559 U.S. 34, 37 (2010), excessive force

claims brought by pretrial detainees under the Fourteenth Amendment are evaluated under the "objectively unreasonable" standard. Id. at 2473. When determining whether or not an officer's use of force was objectively unreasonable, Courts evaluate the case from the perspective of a reasonable officer on the scene at the time of the event, and not with the 20/20 vision of hindsight. Graham v. Connor, 490 U.S. 386, 396 (1989). Courts must also balance the state's legitimate interest in maintaining order in the facility in which the individual is detained, and, where appropriate, defer to the "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 540 (1979). Courts may look at a variety of factors to determine whether the force used was objectively unreasonable, including but not limited to: the relationship between the need for the use of force and the amount of force used, the extent of the detainee's injury, the threat reasonably perceived by the officer, and whether the detainee was actively resisting. Kingsley, 135 S. Ct. at 2473.

### 2.   Conditions of Confinement

While the law in this area is not quite settled, it appears that claims brought by pre-trial detainees for inhumane conditions of confinement are also subject to the objectively unreasonable standard announced in Kingsley. Castro v. Cty. of Los Angeles, No. 12-56829, 2016 WL 4268955, at *6 (9th Cir. Aug. 15, 2016) (en banc) (citing Kingsley, 135 S. Ct. at 2473-74). Under this standard, a plaintiff asserting a claim against an individual officer must show that (1) the defendant made an intentional decision with respect to the conditions under which the detainee was confined, (2) those conditions placed him at a substantial risk of suffering serious harm, (3) a reasonable officer in the defendant's position would have recognized that risk and taken reasonable, available measures to abate it, and (4) the detainee was harmed. Id. at *7.

### F.   Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment dictates that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is

essentially a direction that all persons similarly situated should be treated alike. Plyler v. Doe, 457 U.S. 202, 216 (1982). An equal protection claim may be based upon a showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class, see e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or upon a showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432 (1985).

Plaintiff does not state how he was treated differently from other similarly situated individuals, or how he was discriminated against based on his membership in a protected class. Plaintiff's Equal Protection claim will be dismissed.

**G.  Conspiracy**

Plaintiff claims Defendants were engaged in a conspiracy to indict Plaintiff for a crime he did not commit.

A conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative

level . . . ." Twombly, 550 U.S. at 555 (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. (internal quotations and citations omitted).  As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Here, Plaintiff provides no support for his conspiracy claim other than to allege his belief that each Defendant "knew" he was innocent. He provides no facts supporting such a belief, and he provides no facts showing a "meeting of the minds" to violate Plaintiff's rights. Plaintiff's conspiracy claims will be dismissed.

**H.    State Law Claims**

Plaintiff brings claims for two state torts: false imprisonment and defamation.

This Court may exercise jurisdiction over a state law claim pursuant to 28 U.S.C. § 1367(a), which states in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c).  "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  ACI v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Additionally, before the Court can consider the validity of Plaintiff's state claims against any Defendants, Plaintiff must allege compliance with the California Tort Claims Act.  The Act requires would-be tort plaintiffs to present their claims against public entities to the California Victim Compensation and Government Claims Board, no more than six months after the cause of action accrues.  CAL. GOVT. CODE § 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim, are

prerequisites to filing suit. Castaneda v. CDCR, 212 Cal. App. 4th 1051, 1061 (Cal. Ct. App. 2013); Easter v. CDC, 694 F.Supp.2d 1177, 1185-1186 (S.D. Cal. 2010). Here, Plaintiff has not alleged compliance with the Act. If Plaintiff chooses to pursue state claims, he must have first presented them to the Victim Compensation and Government Claims Board.

The Court will apprise Plaintiff of the standards for each of these claims, should Plaintiff believe he can allege a cognizable claim in his amended complaint.

### 1. False Imprisonment

Under California law, false imprisonment is the "'unlawful violation of the personal liberty of another.'" Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Asgari v. City of Los Angeles, 15 Cal.4th 744, 757 (1997)). The elements of a claim for false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.'" Young v. County of Los Angeles, 655 F.3d 1156, 1169 (9th Cir. 2011) (citing Easton v. Sutter Coast Hospital, 80 Cal. App. 4th 485, 496 (Cal. Ct. App. 2000)).

False arrest is not a different tort. Id. Rather, "'it is merely one way of committing a false imprisonment.'" Id.

### 2. Slander

To establish a prima facie case for slander, a plaintiff must "demonstrate an oral publication to third persons of a specified false matter that has a natural tendency to injure or that causes special damages." Mann v. Quality Old Time Serv. Inc., 120 Cal. App. 4th 90, 106 (Cal. Ct. App. 2004). "Certain statements are deemed to constitute slander per se, including statements (1) charging the commission of crime, or (2) tending directly to injure a plaintiff in respect to the plaintiff's business by imputing something with reference to the plaintiff's business that has a natural tendency to lessen its profits." Id. at 106-7 (citing Cal. Civ. Code § 46(1); Albertini v. Schaefer, 97 Cal. App. 3d 822, 829 (Cal. Ct. App. 1979). Slander per se is actionable without proof of special damage. Id.

"In order to fall outside the scope of First Amendment protection, an alleged

defamatory statement must 'contain a provably false factual connotation.'" <u>Crowe v. Cty. of San Diego</u>, 608 F.3d 406, 442 (9th Cir. 2010) (citing <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 861 (9th Cir.1999)). Thus to make a cognizable claim, a plaintiff must show: (1) the statement implies an assertion of objective fact, and (2) that fact is false. <u>Id.</u>

## I.   Failure to Report Misconduct

Plaintiff alleges Defendant Opinski failed to report his colleagues' misconduct.

An individual may only be held liable under § 1983 if he or she "personally participated" in the violation of Plaintiff's rights. See <u>Ingram v. Brewer</u>, No. 1:07-cv-00176-OWW-DLB, 2009 WL 89189 (E.D. Cal. January 12, 2009) ("In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights."). Opinski's alleged failure to report his colleagues' misconduct does not state a claim. <u>Woodfork v. Fakhoury</u>, No. CV 09-6849-JVS (AGR), 2010 WL 114484, at *2 (C.D. Cal. Jan. 6 2010) (citing <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 123 (1992) ("vicarious liability will not attach under § 1983")).  Plaintiff's failure to report claim will be dismissed.

## V.   Conclusion

Plaintiff's complaint states a cognizable claim against Defendant Sergeant Doe for violating the Due Process Clause by fabricating evidence against Plaintiff.  Plaintiff fails to state a cognizable claim against any other Defendant or for any other constitutional violation.  The Court will provide Plaintiff the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies.  <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212-13 (9th Cir. 2012); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the claim found to be cognizable, he may file a notice informing the

Court that he does not intend to amend and he is willing to proceed only on his cognizable claim. The Court will then recommend dismissal of the other claims and the authorization of the opening of discovery for the limited purpose of discovering the identity of Sergeant Doe.

The Court advises Plaintiff an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint filed March 21, 2016;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claim found to be cognizable in this order; and

3. If Plaintiff fails to file an amended complaint or a notice of willingness to proceed on the cognizable claim, this Court will recommend this action be dismissed, with prejudice, for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:  October 18, 2016                    /s/ *Michael J. Seng*
                                            UNITED STATES MAGISTRATE JUDGE

14